## EX PARTE LEWIS SCWARTZ.

1. HABEAS CORPUS.—The writ of *habeas corpus* does not operate as an appeal,.
   writ of error, or *certiorari,* nor has it the force or effect of those proceed-
   ings. It does not reach such errors or irregularities as would render a
   judgment voidable merely, but only such illegalities as render it void.

2. SAME.—An irregularity is a disregard of some prescribed rule or mode of
   proceeding, and consists either in omitting to do something necessary to
   the due and orderly prosecution of the cause, or in doing it at an unsea-
   sonable time, or in an improper manner.

3. SAME.—Illegality is predicable of radical defects only, and signifies that.
   which is contrary to the principles of law as contradistinguished from.
   mere rules of procedure. It denotes a complete defect in the proceedings..

4. Right of Bail.—The constitutional guarantee of the right of bail is not operative after trial and conviction.

5. Appellant was convicted and fined in a mayor's court for an assault and battery, and appealed to the county court, tendering to the mayor an appeal bond, which, though defective, was approved by the mayor, who then sent up the case to the county court. A motion to dismiss, for want of a sufficient bond, being made in the county court, the appellant's attorney tendered the mayor a new bond, telling him the first one was · defective. The mayor refused to approve the new bond, and the county court dismissed the appeal, and awarded a *procedendo* to the mayor, who issued a *capias pro fine* for · the appellant, who, being taken in custody, sued out *habeas corpus* before the county court, alleging that he had been denied the right of appeal. On a hearing of the *habeas corpus* the county court dismissed the writ, with judgment remanding the appellant to custody until payment of the fine and costs. On appeal to this court, *held,* that there is nothing apparent to show a want of jurisdiction in the mayor's or the county court, or to repel the legal presumption in favor of their adjudications in the case; and that, if there was error in their proceedings, it was not remediable here by virtue of the writ of *habeas corpus*.

APPEAL from the County Court of Lamar. Tried below before the Hon. S. C. Bryson, County Judge.

The case is fully and clearly stated in the opinion.

*J. M. Long*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

Winkler, J. The relator states, in his petition for *habeas corpus*, "that he is unlawfully restrained of his liberty by one L. B. Hunt, marshal of the city of Paris, without any legal authority known to petitioner; that the said Hunt acts, or pretends to act, under and by virtue of a *capias pro fine* issued by M. H. Burnett, mayor of the city of Paris, which he cannot obtain; in which connection petitioner alleges that he was arrested and tried on the 8th day of September, A. D. 1876, before the aforesaid Burnett, on a charge of assault and battery, and fined five dollars and costs, from which judgment he was desirous of appealing, and, after a

motion for a new trial was overruled, gave notice of an appeal in open court. That, on the — day of September, A. D. 1876, he presented to said mayor a good and sufficient appeal bond, in manner and form as required by law, which appeal bond the said mayor refused to entertain—to approve or disapprove, as required by law—whereby your petitioner alleges he was deprived of the benefit of an appeal — a right guaranteed him by the Constitution and laws of this state ; and that the aforesaid Hunt, city marshal of Paris, now restrains him of his liberty, keeping him in duress vile, because he does not pay the aforesaid fine and costs, which petitioner alleges he should not pay, for he is innocent of the charge preferred against him, an innocence he has not been allowed to establish, but of which justification he has been deprived by the illegal and tyrannical act aforesaid.''

L. B. Hunt, marshal of the city of Paris, Lamar county, Texas, answered the writ, and on oath '' says that it is true that he has in his custody Lewis Scwartz, party mentioned in the application for *habeas corpus.* That he holds said Lewis Scwartz in his custody by virtue of a *mittimus* issued by M. H. Burnett, mayor of the city of Paris, Lamar county, Texas, issued out of said mayor's court on the 19th day of September, A. D. 1876, and placed in his hands for execution by said mayor ; that the fine and costs were never collected ; which said *mittimus* is hereto annexed and made part hereof.''

The *mittimus* recites '' that, on the 8th day of September, 1876, one Lewis Scwartz was tried before M. H. Burnett, mayor of the city of Paris, for an assault and battery, and fined five dollars, and the further sum of sixteen dollars and thirty-five cents costs of suit, and, in default of payment of said fine and costs, to be committed to the city prison (calaboose), to be discharged at the rate of one dollar per day. That an appeal was taken to the county court of Lamar county. That, on the 15th day of September, 1876, said

appeal was dismissed, and a *procedendo* ordered to be issued to the mayor's court, from which said appeal was taken, commanding the mayor to execute the judgment theretofore rendered in said cause, and commanding the city marshal to "take the body of the aforesaid Lewis Scwartz and him commit to the city prison (calaboose) of the city of Paris, to be there safely kept, in default of the payment of said sum of five dollars fine, and also the further sum of sixteen dollars and thirty-five cents costs of suit, until said amounts be fully and completely discharged." Dated September 19, 1876, and signed by the mayor.

Agreeably to the statement of facts sent up with the record, the attorney who represented the relator on the trial before the mayor prepared for his client an appeal bond, which was accepted and approved by the mayor, which bond is set out in the record as "conditioned that the defendant will abide the judgment of the county court that may be rendered in this cause;" which bond was "filed and approved" by the mayor on September 8, 1876, and which, the attorney says, he ascertained was, as he believed, technically insufficient, and he prepared another, which is also set out in the record, and which is dated September 13, 1876, in which the said Scwartz and his sureties bound themselves to pay to the city of Paris the sum of $50, "conditioned that the said Lewis Scwartz shall prosecute his appeal with effect, and shall pay such fine and costs as shall be awarded against him by the county court of Lamar county, as well as all costs that may have been adjudged against him in the court below." That the attorneys for the accused presented this last-named bond to the mayor, who refused to receive it—the attorney telling the mayor that the first bond filed was defective. The mayor declined to receive this second bond, on the ground "that the case had been appealed to the county court, and that he had delivered the papers to the clerk."

The mayor testified as to the trial had before him, and said he approved the first appeal bond, "after examining the securities thereon, but did not examine the bond otherwise," and corroborates the attorney in his testimony as to returning the papers to the county court, and the presentation and his declining to receive the second bond, because, he says, "the case had gone beyond my jurisdiction." The mayor testified as follows: "I issued the paper attached to Marshal Hunt's return after receiving a *procedendo* from the county court;" which is also set out in the record, and recites that, on motion of the county attorney, the cause was dismissed "for the want of a sufficient appeal bond," and commanding the mayor to "proceed to execute and carry out the judgment of your [the mayor's] court in said cause."

The city marshal testified that he held the appellant under the writ attached to his return of the writ of *habeas corpus*, and "that the fine and costs had never been paid."

Several bills of exception are set out in the record. One is that the applicant asked M. H. Burnett, who was being examined in the case, "What kind of a judgment did you render in this case, and have you your docket here?" which was objected to by the county attorney, and the objection was sustained by the court, and a bill of exceptions taken.

Another is as to the ruling of the court in refusing to admit a petition for *certiorari*, prepared for the purpose of removing the original case from the mayor's court to the county court, which appears to have been presented to the county judge, and by him rejected, on September 21, 1876.

Another raises a question as to the correctness of the ruling of the court in refusing certain testimony offered as to something that occurred in the mayor's court, alleged to be "connected with the difficulty," and which was ruled out on the objection of the relator's attorney.

From the record before us, and from which we have

quoted as above, it must be apparent that the sole object of the petition for *habeas corpus* is to make the writ answer the purposes of an appeal from the mayor's court to the county court, and to revise the action of the county court in dismissing his appeal, and to afford redress against the action of the county judge in refusing to award a writ of *certiorari* sought for the purpose of affording relief against the action of the mayor in the case. On the hearing of the writ the county judge dismissed the case and remanded the appellant to the custody of the city marshal, and from this action the applicant appeals.

There is nothing in the record to justify this court in departing from established rules of presumptions in favor of the regularity of the proceedings had before the mayor in trying and fining the applicant in the first instance ; nor are we called upon to revise in this proceeding the action of the county court in dismissing the appeal from the judgment of the mayor's court ; but we may say, *en passant*, that it does not appear that either the mayor or the county court acted without jurisdiction. There may possibly have been some irregularities, but as to them we are not required to examine.

In Hurd on Habeas Corpus the learned author, treating of this subject and the various rules laid down for the guidance of courts in cases of the kind under consideration, on page 332 says :

" When the return shows a detainer under legal process, the only proper points for examination are the existence, validity, and present legal force of the process, except when in criminal matters the court or officer hearing the *habeas corpus* is invested with a revisory or corrective jurisdiction over the court or officer commanding the imprisonment, and with jurisdiction also over the offense or subject-matter of the commitment ; in which case the facts constituting the grounds of commitment may be reviewed."

Looking, then, to the petition for *habeas corpus*, we find

the relator states the grounds upon which he seeks to be discharged as follows: "He presented said mayor a good and sufficient appeal bond, in manner and form as required by law, which appeal bond the said mayor refused to entertain—to approve or disapprove, as required by law;" whilst it is shown by the record and by the testimony that the bond here spoken of was not tendered to the mayor, nor offered in the county court, until after an appeal had been perfected to the county court, and not until after a motion had been made in the county court to dismiss the appeal for the want of a sufficient appeal bond.

Petitioner alleges he is innocent of the charge, and has been deprived of an opportunity to establish his *justification;* but he does not set out in his petition what his. justification was, nor why he did not make his defense before the mayor on the trial.

"A proceeding defective for irregularity and one void for illegality may be revised upon error or *certiorari;* but it is the latter defect only which gives authority to discharge on *habeas corpus.*" An irregularity is defined to be a want of adherence to some prescribed rule or mode of proceeding, and it consists either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unreasonable time or improper manner. Hurd on Habeas Corpus, 333, citing Tidd's Pr. 434, and 3 Chitty's Genl. Pr. 509.

Illegality is properly predicable of radical defects only, and signifies that which is contrary to the *principles* of law as distinguished from mere *rules* of procedure. It denotes a complete defect in the proceedings. Hurd, 333; Tidd's. Pr. 435.

The constitutional provision guaranteeing bail, except in capital cases, relates to persons who are accused before trial and conviction. Ex parte *Ezell,* 40 Texas, 460.

"The writ of *habeas corpus* was not designed to operate as a writ of error or *certiorari,* and does not have their force

and effect. It does not deal with errors or irregularities which render proceedings voidable merely, but such only as render them absolutely void." *Perry* v. *The State*, 41 Texas, 490.

The case of *Darrah* v. *Westerlage*, 44 Texas, 388, was not unlike the present case in several respects ; and there it was held " that the writ of *habeas corpus* cannot be made use of to effect an appeal, or as a writ of error. The extent to which the court below could go, in looking into the orders of the recorder, was as to his power to hear and determine the question involved in the trial before the recorder." Applying this rule to the present case, the county judge could only have inquired whether in this case the mayor of the city of Paris had power to hear and determine a charge of assault and battery.

" Whether the proof warranted the judgment was not a matter that could be investigated by the judge on the hearing of the writ of *habeas corpus*." *Darrah* v. *Westerlage*, above referred to. Nor could he, we believe, have revised the action of the county court in dismissing his appeal, or that of the county judge in refusing a *certiorari*, on the ground set out in the petition for that writ, as embodied in the record before us.

The present case is unlike Ex parte *Coopwood*, 44 Texas, 467, and the authorities cited in support of the decision in that case, in this.: that here the writ was granted, whereas in that case the writ of *habeas corpus* was refused. The point there decided was that an appeal does not lie from the action of the judge in refusing to grant the writ. This is an appeal from the decision of the case after having granted the writ and inquired into the case.

If the mayor approved an insufficient appeal bond, and the county court dismissed the appeal because the appeal bond was not such as the law required, this matter cannot be inquired into or corrected on *habeas corpus*. It has not

6

been made to appear either that the mayor did not have jurisdiction to hear the case in the first instance, nor that the county court did not have jurisdiction over the appeal. We are unable to see, from anything in the record before us, that the relator has been illegally restrained of his liberty, or that the county judge erred in causing him to be remanded to the custody of the marshal until the fine and costs are paid.

The judgment of the county court of Lamar county in dismissing the writ of *habeas corpus* is affirmed.

*Affirmed.*